**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JONATHAN RAUL, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>  v.<br><br>L3 TECHNOLOGIES, INC., CHRISTOPHER E. KUBASIK, ROBERT B. MILLARD, CLAUDE R. CANIZARES, THOMAS A. CORCORAN, ANN E. DUNWOODY, LEWIS KRAMER, RITA S. LANE, LLOYD W. NEWTON, VINCENT PAGANO, JR., and H. HUGH SHELTON,<br><br>          Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jonathan Raul ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by L3 Technologies, Inc. ("L3" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning the Company and the Defendants.

## SUMMARY OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public shareholders of L3 against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company in an all cash transaction with Harris Corporation ("Harris" or "Parent") through its wholly owned subsidiary Leopard Merger Sub Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On October 14, 2018, L3 announced that it had entered into a definitive agreement (the "Merger Agreement") with Harris, pursuant to which Merger Sub will merge with and into the Company (the "Merger"), with the Company continuing as the surviving corporation and a wholly owned subsidiary of Harris.  Following the Merger, Harris will change its name to "L3 Harris Technologies, Inc.," and Harris, L3 and their respective subsidiaries will operate as a combined company under this name.  Pursuant to the terms of the Merger Agreement, upon successful completion of the merger, each issued and outstanding share of L3 common stock will be converted into the right to receive 1.30 shares of Harris common stock equal to approximately $201.33 per share based upon the closing price of Harris common stock on October 12, 2018 (the "Merger Consideration").  The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the stockholders of L3.

3.      The Merger Consideration being offered to shareholders in connection with the Proposed Transaction is fundamentally unfair.  Defendants failed to obtain an exchange ratio collar provision to be included in the Merger Agreement, which would protect the Company's shareholders from a drop in Harris' stock price between the Proposed Transaction's

announcement and completion.  Since the announcement of the Proposed Transaction, Harris' stock price has fallen from $172.44 on October 15, 2018, the day following the announcement of the Proposed Transaction, to $128.25 on December 26, 2018.  The decrease in Harris' stock currently values the Merger Consideration at approximately $166.72 per share as of December 26, 2018, down from $201.33 on October 12, 2018.

4.      On December 14, 2018, in order to convince L3 stockholders to vote in favor of the Proposed Transaction, the Board, jointly with Harris, authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement with the SEC (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against L3 and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to L3's stockholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

7.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the

exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.  Additionally, the Company is headquartered in this District and the Company's common stock trades on the New York Stock Exchange (the "NYSE"), which is headquartered in this District.

**THE PARTIES**

9.      Plaintiff is, and has been at all times relevant hereto, the owner of L3 common stock.

10.      Defendant L3 is a Delaware corporation with its principle executive offices located at 600 Third Avenue, 34th Floor, New York, New York 10016.  The Company's common stock is traded on the NYSE under the symbol "LLL."

11.      Defendant Christopher E. Kubasik ("Kubasik") is and has been the Company's Chief Executive Officer and Chairman of the Company's Board at all times during the relevant time period.

12.      Defendant Robert B. Millard ("Millard") is and has been a member of the Company's Board at all times during the relevant time period.

13.      Defendant Claude R. Canizares ("Canizares") is and has been a member of the Company's Board at all times during the relevant time period.

14.      Defendant Thomas A. Corcoran ("Corcoran") is and has been a member of the Company's Board at all times during the relevant time period.

15.      Defendant Ann E. Dunwoody ("Dunwoody") is and has been a member of the Company's Board at all times during the relevant time period.

16.    Defendant Lewis Kramer ("Kramer") is and has been a member of the Company's Board at all times during the relevant time period.

17.    Defendant Rita S. Lane ("Lane") is and has been a member of the Company's Board at all times during the relevant time period.

18.    Defendant Lloyd W. Newton ("Newton") is and has been a member of the Company's Board at all times during the relevant time period.

19.    Defendant Vincent Pagano, Jr. ("Pagano") is and has been a member of the Company's Board at all times during the relevant time period.

20.    Defendant H. Hugh Shelton ("Shelton") is and has been a member of the Company's Board at all times during the relevant time period.

21.    Defendants Kubasik, Millard, Canizares, Corcoran, Dunwoody, Kramer, Lane, Newton, Pagano, and Shelton are collectively referred to herein as the "Individual Defendants."

22.    Defendant L3, along with the Individual Defendants, are collectively referred to herein as "Defendants."

## CLASS ACTION ALLEGATIONS

23.    Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of L3 (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

24.    This action is properly maintainable as a class action for the following reasons:

a.    The Class is so numerous that joinder of all members is impracticable. As of September 28, 2018, there were 78,597,571 common shares of L3 outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b.     Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Registration Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Registration Statement as currently composed.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

f.     A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

25.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

26.    L3, a Delaware corporation, is an innovator and leading provider of global ISR, communications and networked systems, and electronic systems for military, homeland security and commercial aviation customers. L3 develops advanced defense technologies and commercial solutions in pilot training, aviation security, night vision and EO/IR, weapons, maritime systems and space.

### The Company Announces the Proposed Transaction

27.    On October 14, 2018, the Company issued a press release announcing the Proposed Transaction, which stated, in pertinent part:

> MELBOURNE, Fla. & NEW YORK--(BUSINESS WIRE)--Harris Corporation (NYSE:HRS) and L3 Technologies, Inc. (NYSE:LLL) have agreed to combine in an all stock merger of equals to create a global defense technology leader, focused on developing differentiated and mission critical solutions for customers around the world. Under the terms of the merger agreement, which was unanimously approved by the boards of directors of both companies, L3 shareholders will receive a fixed exchange ratio of 1.30 shares of Harris common stock for each share of L3 common stock, consistent with the 60-trading day average exchange ratio of the two companies. Upon completion of the merger, Harris shareholders will own approximately 54 percent and L3 shareholders will own approximately 46 percent of the combined company on a fully diluted basis.
>
> The combined company, L3 Harris Technologies, Inc., will be the 6th largest defense company in the U.S. and a top 10 defense company globally, with approximately 48,000 employees and customers in over 100 countries. For calendar year 2018, the combined company is expected to generate net revenue of approximately $16 billion, EBIT of $2.4 billion and free cash flow of $1.9 billion.
>
> Harris Chairman, President and Chief Executive Officer, William M. Brown said, "This transaction extends our position as a premier global defense technology company that unlocks additional growth opportunities and generates value for our customers, employees and shareholders. Combining our complementary franchises and extensive technology portfolios will enable us to accelerate innovation to better serve our customers, deliver significant operating synergies and produce strong free cash flow, which we will deploy to drive shareholder value. Integration planning is already underway, and from our extensive experience with integration, we are confident in our ability to realize $500 million of annual gross cost synergies and $3 billion of free cash flow by year 3."

L3 Chairman, President and Chief Executive Officer, Christopher E. Kubasik said, "This merger creates greater benefits and growth opportunities than either company could have achieved alone. The companies were on similar growth trajectories and this combination accelerates the journey to becoming a more agile, integrated and innovative non-traditional 6th Prime focused on investing in important, next-generation technologies. L3 Harris Technologies will possess a wealth of technologies and a talented and engaged workforce. By unleashing this potential, we will strengthen our core franchises, expand into new and adjacent markets and enhance our global presence."

**Strategic Benefits of the Merger**

**Increased scale with a well-balanced portfolio of complementary franchises:** The combined portfolio brings depth and balance of relationships across a wide range of customers, in both the U.S. and international markets. Increased scale will enable the combined company to be more cost competitive, expand capabilities to provide end-to-end solutions across multiple domains of air, sea, land, space and cyber, enhance leadership in RF and spectrum technologies and establish a leading platform-agnostic supplier and integrator.

**Shared culture of innovation and operating philosophy creates stronger platform to drive growth:** Both L3 and Harris are technology driven organizations with significant R&D investment and a combined workforce of approximately 22,500 engineers and scientists. The combined company plans to accelerate investment in select technologies to expand leadership in key strategic domains including national security. By leveraging a common operating philosophy of continuous improvement and operational excellence, L3 Harris Technologies will continue to drive operating margin improvement.

**Meaningful value creation opportunity:** The combination is expected to generate approximately $500 million of annual gross pre-tax cost synergies, or $300 million net of savings returned to customers, in year 3. The savings will come from reducing direct and indirect spend, rationalizing footprint, consolidating corporate and segment headquarters, establishing a common shared services platform for IT and finance and reducing other overhead costs. The company is expected to invest approximately $450 million cash to achieve the synergies over the next 3 years.

**Strong balance sheet with significant cash flow generation:** On a calendar year 2018 basis, L3 Harris Technologies is expected to have approximately $16 billion of revenue, $2.4 billion of EBIT, and $1.9 billion of free cash flow. The combined company will target $3 billion in free cash flow by year 3, driven by organic growth, cost synergies, working capital improvements and capital expenditure efficiencies. L3 Harris Technologies will be well capitalized with a strong balance sheet and a leverage ratio of 2.2x net debt to trailing twelve months EBITDA. The combined company will remain committed to maintaining an investment grade credit rating and a dividend payout consistent with each company's current

practice and deploying excess cash toward share repurchases, including up to $2 billion in share repurchases in the 12 months post-closing.

**Governance and Leadership**

L3 Harris Technologies will be headquartered in Melbourne, Florida and led by a highly experienced and proven leadership team that reflects the strengths and capabilities of both companies and will share equally in the integration process.

The combined company's Board of Directors will have 12 members, consisting of six directors from each company. William M. Brown will serve as chairman and chief executive officer, and Christopher E. Kubasik will serve as vice chairman, president and chief operating officer for the first two years following the closing of the transaction. For the third year, Mr. Brown will transition to executive chairman and Mr. Kubasik to chief executive officer, after which Mr. Kubasik will become chairman and chief executive officer.

Additional senior leadership positions for L3 Harris Technologies will be determined at a later date.

**Timing and Approvals**

The merger is expected to close in mid-calendar year 2019, subject to satisfaction of customary closing conditions, including receipt of regulatory approvals and approval by the shareholders of each company.

**Advisors**

Morgan Stanley & Co. LLC is acting as financial advisor to Harris and Sullivan & Cromwell LLP is serving as principal legal counsel, with Paul, Weiss, Rifkind, Wharton & Garrison LLP as special counsel to the board of directors. Goldman Sachs is acting as financial advisor to L3 and Simpson Thacher & Bartlett LLP is serving as legal counsel.

### The Proposed Transaction is Unfair to Shareholders

28.    The Proposed Transaction, as currently contemplated, is unfair to the Company's shareholders.

29.    First, the Company failed to negotiate an exchange ratio collar provision which would protect its shareholders in the event of a decline of Harris common stock.  Indeed, since the announcement of the Proposed Transaction, Harris' stock price has fallen from $172.44 on October 15, 2018, the day following the announcement of the Proposed Transaction, to $128.25 on December 26, 2018.  The decrease in Harris' stock values the Merger Consideration at

approximately $166.72 per share as of December 26, 2018, down from $201.33 on October 12, 2018.

30.     Moreover, when entering into the Merger Agreement, the Company's Board agreed to preclusive deal protection devices that ensure that no competing offers for L3 will be forthcoming.

31.     Specifically, pursuant to the Merger Agreement, Defendants agreed to: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers; (ii) an information rights provision that requires the Company to keep Harris informed of the status and material terms of any proposals or offers received concerning a bona fide acquisition proposal; and (iii) a provision that requires the Company to pay Harris a termination fee of $590 million if the Company terminates the Proposed Transaction under specified circumstances.

32.     These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of L3.  Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that the Company's shareholders receive all material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Transaction.

### FALSE AND MISLEADING STATEMENTS
### AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

33.     On December 14, 2018, the Company authorized the filing of the Registration Statement by Harris with the SEC.  The Registration Statement recommends that the Company's stockholders vote in favor of the Proposed Transaction.

34.     Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not

contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

<strong>Material False and Misleading Statements or Material<br>Misrepresentations or Omissions Regarding the Harris and L3 Projections</strong>

35.    The Registration Statement contains financial projections prepared by Harris and L3 senior management given to the Board, Goldman Sachs, and Morgan Stanley in connection with the Proposed Transaction, but fails to provide material information concerning such.

36.    The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

37.    In order to make the L3 and Harris Financial Projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

38.     With respect to the L3 Financial Projections, at the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including (i) Revenue; (ii) Operating Income; and (iii) Free Cash Flow.

39.     With respect to the Harris Financial Projections, at the very least, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including (i) Revenue; (ii) EBIT; and (iii) Free Cash Flow.

40.     Disclosure of the above line item projections is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Goldman Sachs' Financial Opinion**

41.     The Registration Statement contains the financial analyses and opinion of Goldman Sachs concerning the Proposed Transaction, but fails to provide material information concerning such.

42.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Registration Statement does not disclose: (i) the basis for using discount rates ranging from 7.25% to 8.25% and perpetuity growth rates ranging from 2.25% to 2.75% in Goldman Sachs' analysis of L3 on a stand-alone basis; (ii) the basis for using discount rates ranging from 7.00% to 8.00% and perpetuity growth rates ranging from 2.25% to 2.75% in Goldman Sachs' analysis of the pro forma combined company; (iii) estimates of unlevered free cash flow for L3 for the fourth quarter of 2018 and calendar years 2019 through 2023; and (iv) the line items used to calculate each company's unlevered free cash flows.

43.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Registration Statement does not disclose: (i) the basis for using an illustrative discount rate of 8.75% in Goldman Sachs' L3 Stand-alone analysis; and (ii) the basis for

applying a range of NTM P/E multiples of 17.0x to 21.0x to the next twelve-month earnings per share estimates for the pro forma combined company.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Morgan Stanley's Financial Opinion**

44.     The Registration Statement contains the financial analyses and opinion of Morgan Stanley & Co. LLC ("Morgan Stanley") concerning the Proposed Transaction, but fails to provide material information concerning such.

45.     With respect to Morgan Stanley's *Comparable Companies Analysis*, the Registration Statement does not disclose: (i) the basis for choosing the companies used in Morgan Stanley's analysis; (ii) the basis for applying a CY2019 P/E Ratio of 17.0x to 20.0x and 16.0x to 19.0x for Harris and L3 respectively to their projected CY2019 earnings per share; and (iii) the basis for applying CY2019 FCF Yield of 5.25% to 6.25% and 5.75% to 6.75% for Harris and L3 respectively to their projected CY2019 levered free cash flows.

46.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Registration Statement does not disclose: (i) the basis for applying a perpetual growth rate of 3.0% to the normalized unlevered free cash flow of Harris for fiscal year 2023; (ii) the basis for applying a range of discount rates from 7.4% to 8.7% to calculate the present value of the range of terminal values and unlevered free cash flows of Harris as of September 30, 2018; (iii) the basis for applying a perpetual growth rate of 3.0% to the normalized unlevered free cash flow of L3 for 2023; (iv) the basis for applying a range of discount rates from 7.6% to 8.8% to calculate the present value of the range of terminal values, unlevered free cash flows and the tax-affected present value of the 2023 net unfunded pension liability of L3 as of September 30, 2018.

47.     In addition to the above, the Registration Statement notes that Morgan Stanley reviewed publicly available equity research analysts' 12-month share price targets for both L3

and Harris as of October 10, 2018, but fails to disclose which research analysts' targets were used.

48.    When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

49.    Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

### COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

50.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

52.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

53.    The Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

54.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

55.    The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

56.    The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the

sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

57.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

58.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

59.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

60.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61.     The Individual Defendants acted as controlling persons of L3 within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers

and/or directors of L3, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

62.    Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

64.    In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

65.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

66.    As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

67.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.     Directing the Individual Defendants to disseminate an Amendment to its Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 4, 2019

Respectfully submitted,

By: _____
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ & MILLER LLP**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*

## SWORN CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, Jonathan Raul, hereby certify that:

1.  Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.

2.  I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in LLL securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.

5.  I have served as or sought to serve as a representative party on behalf of a Class under this title during the last three years. *See* attached Exhibit B.

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 01/04/2019



Signature

**Exhibit A**

My transactions in L3 Technologies, Inc. (LLL) securities that are the subject of this litigation during the class period set forth in the complaint are as follows ("P" indicates a purchase, "S" indicates a sale):

| Security | Date | Sale | Purchase | Number of Shares | Price per Share |
|---|---|---|---|---|---|
| LLL | 07/07/2011 | | P | 5.867 | $89.79 |

## **Exhibit B**

*Raul v. Ruby Tuesday, Inc., et al.*, Case No. 3:17-cv-494 (E.D. Tenn.)
*Raul v Alcobra, Ltd., et al.*, Case No. 1:17-cv-1233 (S.D.N.Y.)
*Raul v. Mitchell, et al.*, Case No. 2:16-cv-194 (S.D. Miss.)
*Raul v. Pandora Media, Inc., et al.*, Case No. 4:18-cv-7167 (N.D. Cal.)
*Raul v. Sakhai, et al.*, Case No. 1:17-cv-2035 (S.D.N.Y.)